In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-15-00279-CV
_____

JEANETTE HAGELSKAER, Appellant

V.

TEXAS DEPARTMENT OF TRANSPORTATION, Appellee

On Appeal from the 284th District Court
Montgomery County, Texas
Trial Cause No. 13-10-10673 CV

OPINION

This is an accelerated interlocutory appeal from the trial court's order granting the plea to jurisdiction filed by the Texas Department of Transportation (TXDOT). In four issues, Jeanette Hagelskaer argues that TXDOT's jurisdictional plea should have been denied. She argues that (1) TXDOT waived its sovereign immunity because her injuries arose out of a TXDOT employee's use or operation of motor-driven equipment; (2) her injuries resulted from a premises or special

1

defect that TXDOT created; (3) the Recreational Use Statute does not apply based on the facts regarding the accident; and (4) if the Recreational Use Statute does apply under the facts related to the accident that resulted in her injury, the evidence the trial court considered during the hearing on TXDOT's plea demonstrates that a fact issue exists on the question of TXDOT's gross negligence. We conclude that TXDOT is immune from the claims Hagelskaer raised in her suit, but we reform the trial court's order so that the dismissal is a dismissal with prejudice. As reformed, the trial court's order, which granted TXDOT's motion to dismiss, is affirmed.

## Background

In March 2013, TXDOT repaired the northbound shoulder of FM 1486, a two-lane roadway in Montgomery County, Texas. In the course of its repairs, TXDOT closed the northbound lane of FM 1486, and allowed traffic on the road to alternate the use of the southbound lane to allow the traffic to bypass the construction being done in the northbound lane that was being repaired. Although the northbound lane was closed to traffic, it was occupied in various places by TXDOT workers, vehicles, and equipment, which were being used to repair the road. TXDOT stationed flaggers at each end of the project to control the use of the southbound lane being used to bypass the construction, and the flaggers were

2

equipped with radios to coordinate the movement of traffic through the southbound lane.

Hagelskaer, travelling south, approached the construction zone on her bicycle with a group of other cyclists. The flagger, who TXDOT stationed at the north end of the construction zone, allowed Hagelskaer along with the other cyclists, to enter the southbound lane. As the cyclists were passing through the construction zone, Hagelskaer noticed there was an oncoming vehicle in the southbound lane. Although Hagelskaer managed to safely pass the first northbound vehicle she encountered in the southbound lane, the next vehicle, a truck, hit her bicycle, which knocked her to the ground. She suffered a broken wrist as a result of the collision.

In the suit Hagelskaer filed against TXDOT and the driver of the truck that struck her bicycle, Hagelskaer claimed that there was not sufficient room in the southbound lane to allow both northbound and southbound traffic to share the lane because where the accident occurred, TXDOT was using a maintainer in the northbound lane. According to the driver of the truck involved in the accident, whose deposition was included in the evidence the trial court considered in ruling on TXDOT's motion, Hagelskaer slipped on her bike just as he began to pass her,

and he denied that he ever struck her bike. None of the evidence at the hearing indicated that TXDOT's maintainer ever entered the southbound lane.

Approximately seven months after the accident, Hagelskaer filed suit against TXDOT and the driver of the truck, claiming their negligence caused the accident. With respect to the claims she filed against TXDOT, Hagelskaer argued that TXDOT's immunity from suit had been waived under Chapter 101 of the Texas Civil Practice and Remedies Code, the Texas Tort Claims Act. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 101.001-.109 (West 2011 & West Supp. 2015). In her suit, Hagelskaer claimed that TXDOT was negligent for failing to properly direct the flow of traffic, failing to warn her of oncoming traffic, failing to properly train its employees, failing to require its employees to follow their training, creating a dangerous condition, and allowing both northbound and southbound traffic to use the southbound lane when it was not safe to do so.[1] When TXDOT answered the suit, it asserted that it was immune from the claims that Hagelskaer had made, and TXDOT claimed that its immunity from suit had not been waived. TXDOT also filed a plea to the jurisdiction, arguing that under the circumstances that led to Hagelskaer's accident, its immunity had not been waived under the Tort Claims

---

[1] The driver of the truck, while a party to the suit in the trial court, is not a party to this appeal.

Act. The trial court granted TXDOT's plea to the jurisdiction, and Hagelskaer appealed.

Standard of Review

TXDOT challenged the trial court's power to exercise jurisdiction over Hagelskaer's case by filing a plea to the jurisdiction. A plea to the jurisdiction is a dilatory plea that is used to defeat a plaintiff's cause of action without regard to whether the plaintiff's claims have merit, as the plea requires the court to decide whether it possesses subject matter jurisdiction over the plaintiff's case. *See Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 554 (Tex. 2000). Generally, in the absence of the State's permission waving a governmental unit's immunity from suit, a trial court lacks subject-matter jurisdiction over the suit. *See Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 403 (Tex. 1997); *Duhart v. State*, 610 S.W.2d 740, 741 (Tex. 1980). Under the doctrine of governmental immunity, a court lacks jurisdiction to impose a duty on a governmental entity that the Legislature has not chosen to impose by enacting a statute. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224-25 (Tex. 2004) (explaining that immunity to suit and immunity from liability are coextensive under Texas Tort Claims Act).

In tort cases, plaintiffs generally rely on the Tort Claims Act as the source of the Legislature's decision to allow a dispute against the government unit to be

5

heard by a court. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 101.021-.029. In tort cases such as Hagelskaer's, plaintiffs are required to allege a valid waiver of immunity and to affirmatively demonstrate that the court has jurisdiction over the claims being made against the government unit in the case. *See Tex. Dep't of Criminal Justice v. Miller,* 51 S.W.3d 583, 587 (Tex. 2001). On appeal, the trial court's resolution of whether the Tort Claims Act waived a governmental unit's immunity from suit presents a matter involving a question of law that is reviewed under a de novo standard. *See Miranda,* 133 S.W.3d at 226. In determining whether a plaintiff has met her burden to demonstrate that a waiver exists and applies to the facts of a given case, "we consider the facts alleged by the plaintiff and, to the extent it is relevant to the jurisdictional issue, the evidence submitted by the parties." *Tex. Nat. Res. Conservation Comm'n v. White,* 46 S.W.3d 864, 868 (Tex. 2001).

Sovereign Immunity

In issue one, Hagelskaer argues that the Tort Claims Act waives TXDOT's right to immunity because her injuries arose out of TXDOT's operation or use of motor-driven equipment, which in this case consisted of TXDOT's maintainer in the northbound lane. Hagelskaer contends that the presence of TXDOT's maintainer prevented the driver of the truck from being able to safely pass

6

Hagelskaer's bike due to the construction in the northbound lane, which required her to share the southbound lane with the oncoming truck. According to Hagelskaer, the maintainer was being operated in the northbound lane in a manner that left insufficient room in the southbound lane for drivers required to pass each other in the southbound lane.

In response, TXDOT argues that the Tort Claims Act does not contain a waiver for the decisions TXDOT made to handle the traffic through the construction zones, which in this case involved the decisions made by TXDOT employees to allow northbound traffic to enter the southbound lane before the group of bicyclists left the construction zone. According to TXDOT, for a waiver to exist under section 101.021(1) of the Tort Claims Act, the tortious act that is alleged must relate to the manner that the government's vehicles were being operated. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.021 (West 2011) (requiring that the property damage, personal injury, or death arise from the operation or use of a motor-driven vehicle or motor-driven equipment). TXDOT concludes that its immunity was not waived by the Tort Claims Act merely because it allowed both northbound and southbound traffic into the southbound lane and positioned its construction equipment in the northbound lane that was closed for repairs. *See id.* According to TXDOT, no waiver exists under the Tort Claims Act unless the

evidence regarding the accident demonstrates that TXDOT's vehicles were being operated negligently and that the negligent operation of TXDOT vehicles caused Hagelskaer's accident or her injury.

Under the Tort Claims Act, a governmental unit's immunity from suit is waived for "property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if [] the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment[.]" *Id*. In this case, Hagelskaer claims that she and the driver of the truck did not have sufficient room to pass safely because TXDOT was operating its equipment in the northbound lane. Hagelskaer argues that her injuries and property damage relate to the manner that TXDOT's maintainer was being operated, and that her injuries would not have occurred had the maintainer not been there. She contends that the evidence shows that TXDOT's acts or omissions proximately caused both the accident and her injuries.

The Tort Claims Act does not contain a waiver of immunity based on a theory that TXDOT's employees negligently allowed traffic to share the southbound lane. *Id*. And, the evidence in this case does not demonstrate a nexus between the alleged acts and omissions involving TXDOT's use of its maintainer,

8

which remained entirely in the northbound lane, and Hagelskaer's accident, which occurred entirely in the southbound lane. As used in the Tort Claims Act, the term "arises from" requires a nexus between the injury that the governmental employee is alleged to have caused and the manner the governmental unit has used or operated a motorized vehicle or a motorized piece of equipment. *Compare Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 543-44 (Tex. 2003) (holding that a bus passenger's injuries sustained when another bus passenger attacked him after both left the bus were not injuries that arose from the use of the bus and therefore immunity was not waived), *with Ryder Integrated Logistics, Inc. v. Fayette Cty.*, 453 S.W.3d 922, 928 (Tex. 2015) (holding that a deputy's cruiser facing oncoming traffic during an early morning traffic stop was a negligent use of the vehicle thus waiving immunity). The relationship that exists between the accident and the government-owned equipment requires more than mere presence of the equipment near the location where the accident occurred, and requires more than the claim that the presence of the equipment in a place it was legally entitled to be present played a role in circumstances that resulted in the plaintiff's accident. *See Whitley*, 104 S.W.3d at 543. Thus, the concept of "arises from" under the Tort Claims Act requires that the government's operation of a vehicle or motorized equipment serve as a proximate cause of the plaintiff's accident or injuries. *See id.* And, unless the

9

use of the motorized equipment was a substantial factor in causing the accident or the injury, the use or operation of the vehicle or equipment "'does not cause injury if it does no more than furnish the condition that makes the injury possible.'" *Id. (quoting Dallas Cty. Mental Health & Mental Retardation v. Bossley,* 968 S.W.2d 339, 343 (Tex. 1998)).

In this case, the pleadings, together with the evidence before the court regarding the circumstances that led to Hagelskaer's accident, do not show that the positioning of TXDOT's equipment in the northbound lane was a substantial factor in causing Hagelskaer's accident or her injury. The evidence before the court at the hearing demonstrated that Hagelskaer and the truck driver's shared use of a single lane of traffic caused Hagelskaer's injuries, and TXDOT's use of its maintainer in the northbound lane, where it was entitled to be located, was merely the condition that made Hagelskaer's injury possible. *See Tex. Dep't of Pub. Safety v. Grisham*, 232 S.W.3d 822 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (holding that a government vehicle did not cause plaintiff's injuries and upholding the government's claim of immunity when plaintiff's injuries resulted in plaintiff's collision with a disabled vehicle when plaintiff switched lanes to comply with the Move Over Act after seeing the government vehicle); *see also City of Kemah v. Vela,* 149 S.W.3d 199 (Tex. App.—Houston [14th Dist.] 2004, pet. denied)

10

(holding that the plaintiff's injuries were not a result of the use of the patrol car when a driver collided with the patrol car in which plaintiff sat after his arrest, therefore, upholding the city's immunity). Hagelskaer has not shown that the Tort Claims Act contains a waiver for activity that is based on decisions involving a lane closure and decisions by government employees that allowed commuter traffic to share a single lane. Given the circumstances shown by the evidence as to circumstances of Hagelskaer's accident, we agree with the trial court that TXDOT's immunity from suit was not waived for its use of a maintainer that remained wholly in its own lane. *See White,* 46 S.W.3d at 869.

In reaching this conclusion, we note that Hagelskaer never alleged that the maintainer being used in the northbound lane was being operated in a negligent manner. Hagelskaer's deposition, in which she gave her account of the accident, indicates that she could not have alleged in good faith that TXDOT's equipment left the northbound lane. Her deposition reflects that she testified that TXDOT's equipment was in the closed lane, and that it did not protrude into the southbound lane being used by the traffic in the construction zone. We overrule issue one.

### Premises or Special Defect

In her second issue, Hagelskaer relies on the condition of tangible property waiver found in the Tort Claims Act to argue that the State waived its immunity

11

from the claims that she raised in her suit. Specifically, Hagelskaer argues that the pleadings and evidence before the trial court show that a premises or special defect was present on TXDOT's real property. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 101.021(2), 101.025 (West 2011). According to Hagelskaer, the premises or special defect resulted from TXDOT's decision to allow the southbound lane to be used by both northbound and southbound traffic. Hagelskaer contends that TXDOT was aware of the risk presented by using a single lane to bypass the construction in the area where TXDOT was performing its work, and that TXDOT failed to warn her of the dangerous condition that it created by allowing oncoming northbound traffic into the southbound lane that Hagelskaer traveled.

In response, the State argues that the blocked northbound road and the manner the northbound and southbound traffic were allowed to share the southbound lane cannot be properly characterized as a premises defect or a special defect for which its immunity was waived. On appeal, the question of whether closing the northbound lane and allowing traffic to share the southbound lane is capable of classification as a premises or special defect presents a question of law, which is a matter that we review on appeal using a de novo standard. *See State Dep't of Highways & Pub. Transp. v. Payne,* 838 S.W.2d 235, 238 (Tex. 1992).

Special defects present unexpected and unusual dangers to the ordinary users of a roadway. *See Tex. Dep't of Transp. v. York,* 284 S.W.3d 844, 847 (Tex. 2009) (citing characteristics that courts have considered in Tort Claims Act cases to determine whether an obstruction is a special defect, noting that the hazard created by the obstruction must be of a type that presents an unexpected and unusual danger to the ordinary user of the roadway). In Hagelskaer's case, it is undisputed that one lane of the road was blocked and closed for traffic so that TXDOT could perform repairs. Therefore, the blocked road was not itself an obstruction, but it was a detour around the obstruction. *See Brazoria Cty. v. Van Gelder,* 304 S.W.3d 447, 453 (Tex. App.—Houston [14th Dist.] 2009, pet. filed) (determining that the plaintiff's argument that the road's sloped pavement was an obstruction was actually a detour over an obstruction). Additionally, the defect on which Hagelskaer premises her claim concerns the existence of equipment and vehicles on a lane of the road closed for construction. Her claim does not concern a defect or obstruction in the southbound lane where the accident occurred. Tex. Civ. Prac. & Rem. Code Ann. § 101.022(b) (directing that the excavation or obstruction exist *on* the roadway before the government's immunity from suit is waived under the Tort Claims Act).

Additionally, the existence of oncoming traffic in a single lane was not unexpected from Hagelskaer's point of view. The evidence before the trial court relevant to TXDOT's plea shows that TXDOT warned Hagelskaer of the lane closure, that she was aware that she was in a construction zone before the accident occurred, and that she passed one oncoming vehicle in her lane before the accident occurred. The evidence shows that the accident occurred in the southbound lane, and that it did not occur in the northbound lane. Under the circumstances in this case, the condition that TXDOT created, which required northbound and southbound traffic to share a single lane, did not present an unexpected or unusual hazard to Hagelskaer. The evidence shows that she was aware of the fact she was in a single lane shared by traffic to bypass the construction zone before she encountered the second northbound vehicle. Consequently, the condition cannot be properly characterized as a special defect under Texas law. *See Denton Cty. v. Beynon,* 283 S.W.3d 329 (Tex. 2009). We conclude that Hagelskaer failed to show that the accident on FM 1486 occurred due to a premises or special defect in the southbound lane.

Moreover, even if we were to assume that TXDOT's handling of the lane closure created a premises defect in the southbound lane, TXDOT would have no duty to warn her of the presence of oncoming traffic when she was already aware

14

that it was present in her lane. In this case, the evidence before the trial court showed that Hagelskaer was aware before the accident that she was being required to share the southbound lane with oncoming traffic. Therefore, the evidence before the trial court fails to show that TXDOT was aware of a danger of oncoming traffic when Hagelskaer was not. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.022(a) (limiting a governmental unity's duty for premises defects to the duty owed to licensees); *Payne,* 838 S.W.2d at 237 (explaining that the plaintiff, to establish a waiver, must show he had no knowledge of the risk of harm at issue). Thus, Hagelskaer has not demonstrated that a valid waiver exists because she had knowledge of the risk that she would be required to pass an oncoming vehicle while both were sharing the same lane. *Id.*

Having concluded that the blocked lane of traffic and TXDOT's equipment in the northbound lane cannot be classified as either a special defect or a premises defect, we overrule issue two.

Recreational Use Statute

In the trial court, Hagelskaer never pled that the Recreational Use Statute applied to her claim. *See* Tex. Civ. Prac. & Rem. Code Ann. § 75.002 (West 2011). Instead, TXDOT raised the Recreational Use Statute in avoidance of Hagelskaer's Tort Claims Act theory regarding governmental immunity. In the trial court,

15

Hagelskaer countered TXDOT's argument by asserting that the Recreational Use Statute did not apply, as she apparently wished to avoid the requirement under that statute that she would be required to prove that TXDOT had been grossly negligent before she could recover. *Id.* § 75.002(d). In face of TXDOT's argument that the Recreational Use Statute might apply, Hagelskaer never amended her pleadings to rely on the Recreational Use Statute as a basis on which the trial court could exercise jurisdiction over her case.

Because we resolve the appeal based on the statutory provisions that Hagelskaer raised in her pleadings, we need not resolve Hagelskaer's additional arguments, which she presents for the first time in her brief, which claim that a fact issue exists on the issue of TXDOT's gross negligence in the event we were to accept TXDOT's argument that the Recreational Use Statute applies. *See* Tex. R. App. P. 33.1(a); Tex. R. App. P. 47.1.

Cross-Appeal

In its brief, TXDOT included a cross-issue asserting that the trial court erred by dismissing Hagelskaer's claims against TXDOT without prejudice.[2] TXDOT argues that while the case was in the trial court, Hagelskaer had a reasonable opportunity to amend her pleadings to allege the Recreational Use Statute applied,

---

[2] TXDOT perfected its right to raise cross-points on appeal by filing a notice of appeal. Tex. R. App. P. 26.1(d).

and to allege the facts that were necessary to support such a claim. TXDOT contends that because Hagelskaer chose not to amend her pleadings when faced with pleadings raising the possibility that the Recreational Use Statute might arguably apply, the trial court should not have allowed Hagelskaer an opportunity to file new pleadings by dismissing her claims without prejudice.

The record shows that in January 2014, in response to Hagelskaer's original petition, TXDOT filed a combined plea to the jurisdiction and answer. In its plea to the jurisdiction, TXDOT argued that Hagelskaer could not prove that its immunity from suit had been waived. After the trial court set a hearing on TXDOT's plea to the jurisdiction, Hagelskaer filed a notice of nonsuit as to TXDOT, effectively dismissing her suit against it.

Two months later, Hagelskaer sued TXDOT again by naming it in her First Amended Petition. The claims found in Hagelskaer's First Amended Petition against TXDOT mirror those she filed against TXDOT in her Original Petition. TXDOT answered Hagelskaer's First Amended Petition, and following a hearing on its plea to the jurisdiction TXDOT prevailed on its claim that Hagelskaer had failed to raise a valid waiver showing that its immunity from her suit had been waived. Before the hearing, TXDOT's pleadings placed Hagelskaer on notice that that the Recreational Use Statute might arguably apply, but for tactical reasons she

17

apparently chose to argue that the Recreational Use Statute did not apply under the facts to her case.

The record shows that Hagelskaer had a reasonable opportunity to amend her pleadings to allege a basis other than the Tort Claims Act asserting that TXDOT's immunity from suit had been waived. Under the circumstances of this record, we agree with TXDOT that dismissal of Hagelskaer's suit against TXDOT should have been with prejudice. *See Harris Cty. v. Sykes,* 136 S.W.3d 635, 639 (Tex. 2004) (requiring that an order granting a plea to the jurisdiction dismiss the government entity with prejudice if the plaintiff had a reasonable opportunity to amend its pleadings after the filing of the plea to the jurisdiction). Accordingly, we hold that the trial court should have dismissed Hagelskaer's claims against TXDOT with prejudice, and we reform the order to reflect TXDOT was dismissed, "with prejudice."

AFFIRMED AS REFORMED.

_____
HOLLIS HORTON
Justice

Submitted on November 12, 2015
Opinion Delivered April 21, 2016

Before McKeithen, C.J., Horton and Johnson, JJ.

18