

# COURT OF APPEALS
# EIGHTH DISTRICT OF TEXAS
# EL PASO, TEXAS

---

No. 08-24-00325-CV

---

Barbara Baskin, Appellant

v.

Presidio County, Texas, Appellee

---

On Appeal from the 394th Judicial District Court
Presidio County, Texas
Trial Court No. 8244

---

## MEMORANDUM OPINION

Appellant Barbara Baskin appeals from the trial court's order granting Presidio County's plea to the jurisdiction. In one issue, Baskin argues § 101.021(1) of the Texas Tort Claims Act (TTCA) provides a waiver of governmental immunity for her claims against the County because

her damages arose from the County's negligent "operation or use of a motor-driven vehicle." Tex. Civ. Prac. & Rem. Code Ann. § 101.021(1)(A). Finding no error, we affirm.

## I. BACKGROUND

After a May 2023 flood, from which Baskin sustained damages, Baskin sued the County for negligence pursuant to § 101.021(1) of the TTCA. Baskin has lived on a 150-year-old homestead located south of the mountains of Redford, Texas and adjacent to the Rio Grande since 2002. Baskin's property was safeguarded from rain events by a detention pond and dam designed to direct water into an arroyo, which flowed through a spillway and into a historic irrigation canal. The protection system redirected rainwater from the mountains away from Baskin's home. Baskin alleged that, for many years, the County had recognized its responsibility for performing work related to protecting her property and it carried out work on the detention pond and dam to manage water flow from the irrigation canal and the access road to her property.

Baskin alleged the County acknowledged its responsibility for protecting her property, citing in support several incidents of work performed by the County on her property. First, on March 8, 2010, after Border Patrol vehicles damaged an access road to her property, a county judge instructed Ruben Carrasco, the County's roads and bridges supervisor, to make repairs to the road and detention pond. Baskin alleged Carrasco at first did nothing. Then, on July 11, 2011, she alleged the county judge visited her property and again instructed Carrasco to make the previously ordered repairs. Baskin alleged Carrasco still did nothing. Baskin then alleged that on January 7, 2013, Carrasco operated a County truck and dumped three loads of sediment along the access road to her property. She alleged the three loads dumped by Carrasco redirected the natural flow of water and disrupted the protection system for her property. She then alleged that on August 27, 2013, Carrasco met with her and an engineer at the detention pond. The engineer advised Carrasco

2

on how to properly clean the detention system using County bulldozers and backhoes. Baskin alleged that when Carrasco performed the work with the bulldozer and backhoe, he performed it improperly.

Baskin went on to allege that, on June 19, 2014, water broke over the top of the detention pond and the water flow was redirected from south to north, instead of flowing into the Rio Grande. She then alleged that, on December 13 and 14, 2014, Carrasco directed a County employee to use a County backhoe to perform work on the detention pond. She alleged the County employee completed faulty work by following Carrasco's instructions and not the engineer's. Baskin continued that, on May 16, 2018, a special meeting was held at the detention pond where Baskin showed damage from four wheelers and dumping. She alleged that the judge ordered Carrasco to construct and install "No dumping" and "No vehicles" signs around the pond area. The judge further instructed Carrasco to rework and correct the drainage. Baskin alleged the repairs were never made and the signs were never installed. Baskin alleged, that after constant complaints, during the first two weeks of May 2022, County workers performed work using County trucks, bulldozers, and backhoes. She alleged they attempted to raise County Road 18 by stacking auto tires. She alleged this caused the major arroyo to back up, blow out the raised area, and backed up the pond area to the south instead of taking the water to the spillway on the north side. She further alleged the negligent work caused the walls of the dam to erode and become compromised.

Finally, Baskin alleged, on May 27, 2023, rain in the mountains above Redford, Texas, directed water through an arroyo toward the Rio Grande. As the water passed through culverts under Highway 170 above Baskin's property, it ran into the detention pond. Baskin alleged that during Carrasco's mismanaged maintenance of the pond in 2014 with the use of Presidio County motor-driven equipment, the height of the dam impeding the pond waters was significantly

3

lowered and the buildup of sediment was not removed by Carrasco. In addition, she alleged Carrasco's negligent relocation and improper construction of a new spillway reduced the surface area of the pond and resulted in the inevitable failure of the structure. She contended that the "combination of these factors assured that eventually the dam and pond had no chance of containing the water" and that "the dam overtopped in several areas and scoured through the east face resulting in a wall of water hurtling down a smaller dry arroyo to Baskin's house—flooding her home and the entire 10 acres."

Baskin alleged the collapse of the detention pond culminated from years of neglect to the area around her home. More specifically, she alleged the refusal to follow the directives of County superiors, the disregard of instructions from a licensed professional engineer, and the blocking of the vital arroyo paralleling the road in question were the direct causes of the disaster. Baskin alleged Carrasco's negligent operation of the County's motor-driven vehicles and/or equipment caused the property damage. According to Baskin, Carrasco's "shotty operation, supervision and direction of Presidio County's motor driven vehicles and equipment" caused the May 27, 2023 catastrophe.[1]

The County filed a plea to the jurisdiction in which it challenged jurisdiction on three grounds: (1) property damage cannot be recovered in a premises liability case under the TTCA; (2) the County has not waived its governmental immunity for the discretionary function of maintenance of the detention pond; and (3) there is no pleading or evidence to support Baskin's allegation that her damages resulted from the County's operation or use of a motor-driven vehicle or equipment. In Baskin's response to the County's plea, she asserted the County's first and second grounds were not applicable. The trial court conducted a hearing on the plea at which no evidence

---

[1] Baskin originally filed suit against Carrasco but dropped him from the lawsuit in her first amended petition.

was submitted. Baskin asked for the opportunity to amend her pleading if the court decided to grant the plea. The trial court took the case under advisement and later signed an order granting the plea.

Baskin appeals. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (permitting an accelerated appeal of an interlocutory order that "grants or denies a plea to the jurisdiction by a governmental unit").

## II. STANDARD OF REVIEW

"Because governmental immunity is jurisdictional, it is properly raised through a plea to the jurisdiction, which we review de novo." *City of San Antonio v. Maspero*, 640 S.W.3d 523, 528 (Tex. 2022); *El Paso Cnty. Water Improvement Dist. #1 v. Ochoa*, 554 S.W.3d 51, 54 (Tex. App.—El Paso 2018, no pet.) ("Whether a trial court has subject matter jurisdiction is a question of law and is properly asserted in a plea to the jurisdiction[,]" which is reviewed de novo). A plea to the jurisdiction "may challenge the pleadings, the existence of jurisdictional facts, or both." *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018). When, as here, the plea only challenges the pleading itself, we determine whether the plaintiff has alleged facts that affirmatively establish the court's jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). We must accept the allegations in the pleadings as true and construe them liberally in the plaintiff's favor. *Id.*

The plaintiff has the burden of establishing facts that affirmatively show the trial court has jurisdiction. *Maspero*, 640 S.W.3d at 528; *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). If the pleadings fail to allege facts to affirmatively demonstrate the trial court's jurisdiction, but also do not affirmatively demonstrate incurable jurisdictional defects, the issue is one of pleading sufficiency and the plaintiff should be afforded the opportunity to amend.

*Miranda*, 133 S.W.3d. at 226–27. If the pleadings affirmatively negate the existence of jurisdiction, the plea may be granted without affording the plaintiff an opportunity to amend. *Id.* at 227; *see also Rattray v. City of Brownsville*, 662 S.W.3d 860, 865 (Tex. 2023) (holding that if a plaintiff cannot satisfy its burden, the court must dismiss the suit). "Further, if a plaintiff has been provided a reasonable opportunity to amend after a governmental entity files its plea to the jurisdiction, and the plaintiff's amended pleading still does not allege facts that would constitute a waiver of immunity, then the trial court should dismiss the plaintiff's action with prejudice, because a plaintiff should not be permitted to relitigate jurisdiction once that issue has been finally determined." *Sepulveda v. Cnty. of El Paso*, 170 S.W.3d 605, 617 (Tex. App.—El Paso 2005, pet. denied). When the pleadings raise a fact question on jurisdiction, dismissal is improper, and the issue should be resolved by the factfinder. *See Univ. of Tex. at Austin v. Hayes*, 327 S.W.3d 113, 116 (Tex. 2010); *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000) (noting that "the proper function of a dilatory plea does not authorize an inquiry so far into the substance of the claims presented that plaintiffs are required to put on their case simply to establish jurisdiction").

"The Act also provides various exceptions or caveats[, which the plaintiff must negate,] that function as a withdrawal of the waiver, and thus of the court's jurisdiction to proceed, under certain conditions." *Rattray*, 662 S.W.3d at 866–67 (holding both parts of the analysis are needed to answer whether immunity is waived). "[N]o great effort is needed to negate many or indeed most statutory exceptions to the general waiver of immunity" and a "plaintiff has never had to march through the Act provision by provision." *Id.* at 867. "Pleadings whose affirmative allegations functionally exclude the exceptions are typically sufficient." *Id.* "Plaintiffs thus need only expressly negate those exceptions that their allegations plausibly implicate, which will depend on the nature of the dispute." *Id.* at 867–68. "A governmental defendant, in turn, plays its role by

identifying where jurisdiction might be lacking and raising any such deficiencies, most commonly in a plea to the jurisdiction[.]" *Id.* at 868. "If a plaintiff has *not* shown that a claim affirmatively falls within a statutory waiver, the defendant should say so." *Id.* (emphasis in original). "Likewise, if the plaintiff omits or otherwise fails to negate a relevant exception to the waiver, the defendant should speak up." *Id.*

"Just one valid jurisdictional obstacle is enough for the court to halt further proceedings." *Rattray*, 662 S.W.3d at 868. "The fundamental rule is that the court may not reach the merits if it finds a single valid basis to defeat jurisdiction." *Id.* "When one such ground exists, it is not necessary that every other potential jurisdictional defect be raised, fleshed out, or resolved at the outset." *Id.* When, as here, a governmental unit challenges jurisdiction on multiple grounds, "courts are . . . not duty-bound to address them all if any one of them warrants dismissal[.]" *Id.*

## III. APPLICABLE LAW

Chapter 101 of the TTCA waives a governmental unit's immunity for, among other things, property damage "proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if . . . the property damage . . . arises from the operation or use of a motor-driven vehicle or motor-driven equipment and the employee would be personally liable to the claimant according to Texas law." Tex. Civ. Prac. & Rem. Code Ann. § 101.021(1)(A)–(B); *see also id.* § 101.025(a) ("Sovereign immunity to suit is waived and abolished to the extent of liability created by this chapter.").

Although the TTCA does not define the term "arises from," it at least "requires a nexus between the injury negligently caused by a governmental employee and the operation or use of a motor-driven vehicle[.]" *City of El Paso v. Cangialosi*, 632 S.W.3d 611, 622 (Tex. App.—El Paso 2020, no pet.) (quoting *LeLeaux v. Hamshire-Fannett Indep. Sch. Dist.*, 835 S.W.2d 49, 51

(Tex. 1992)). The nexus "requires more than mere involvement of property." *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 543 (Tex. 2003); *Cangialosi*, 632 S.W.3d at 622. "Property does not cause injury if it does no more than furnish the condition that makes the injury possible." *Dallas Cnty. Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 343 (Tex. 1998); *see also Hagelskaer v. Tex. Dep't of Transp.*, 492 S.W.3d 8, 14 (Tex. App.—Beaumont 2016, no pet.) (holding, unless use of motorized equipment was a substantial factor in causing the accident or the injury, the use or operation of the vehicle or equipment does not cause injury if it does nothing more than furnish the condition that makes the injury possible). Rather, "the equipment's use must have *actually caused* the injury." *Rattray*, 662 S.W.3d at 873 (citation omitted).

The Supreme Court has defined "use" as "to put or bring into action or service; to employ for or apply to a given purpose," and "operation" as "a doing or performing of a practical work." *Mount Pleasant Indep. Sch. Dist. v. Estate of Lindburg*, 766 S.W.2d 208, 211 (Tex. 1989) (internal quotations and citations omitted); *Rattray*, 662 S.W.3d at 871. "To that end, our cases require more than merely stating that government property plays a role in an alleged injury." *Rattray*, 662 S.W.3d at 871. However, § 101.021(1)(A) "does not explicitly require that the operation or use be 'active' or that it be ongoing 'at the time of the incident.'" *PHI, Inc. v. Tex. Juv. Just. Dep't*, 593 S.W.3d 296, 305 (Tex. 2019).

A plaintiff can satisfy the "arising from" standard by demonstrating proximate cause, i.e., that the governmental employee's use or operation of the vehicle or equipment proximately caused the relevant injury. *Rattray*, 662 S.W.3d at 873–74. In making this causal assessment, particularly in the context of the TTCA, we look to the record and the pleadings to determine if the alleged cause is too geographically or temporally attenuated from the alleged effect. *Id.* at 874 ("In this sense, the use/nonuse analysis and the nexus requirement understandably inform each other.").

8

"Vast time gaps or vast distances could defeat either showing under these circumstances." *Id.* "But the existence of a logically defined single episode within a small spatial area, where the challenged governmental actions were undertaken both soon after and *because* of the downpour, makes it more likely (but certainly not guaranteed) that both the temporal and geographic showings can be made." *Id.*; *see also City of Dallas v. Hillis*, 308 S.W.3d 526, 532 (Tex. App.—Dallas 2010, pet. denied) ("When an alleged cause is geographically, temporally, or causally attenuated from the alleged effect, that attenuation will tend to show that the alleged cause did no more than furnish the condition that made the effect possible.").

## IV. OPERATION OR USE OF MOTOR-DRIVEN EQUIPMENT

In its plea to the jurisdiction, the County challenge Baskin's allegations under the statute's nexus requirement, alleging the property damage did not arise from the operation or use of the County's motor-driven backhoes, bulldozers, and trucks.[2] The County alleged Baskin's damages did not arise from or involve the use or operation of a motor-driven vehicle and/or equipment because no motor-driven vehicle and/or equipment owned by the County was "doing or performing a practical work," was being "put into action or service," or was otherwise "being employed or applied to a given purpose" at the time of the May 2023 flood. The County asserted that, at most, use of the motor-driven vehicles and/or equipment possibly furnished a condition that may have caused Baskin's damages that resulted from the flooding.

Baskin's claim relies on a pattern of alleged negligent acts using County motor-driven vehicles or equipment or both. According to Baskin, the attempt to raise County Road 18 with

---

[2] During the hearing, the trial court narrowed the issues for its consideration. The trial court asked Baskin's attorney about her allegation that a cause of the damage was that sediment was not removed and how "the failure to act" factored into the court's evaluation of the statute's application. Counsel replied that if that was their sole basis for their claim, the court would be correct in dismissing the claim on the ground that the failure to remove the sediment was within the County's discretion, but counsel added, "that's not what we're saying." Counsel also agreed that if Baskin was alleging negligent design, a dismissal would be appropriate.

stacked auto tires in May 2022—along with Carrasco's previously negligent work on the detention pond—caused the once-stable walls of the dam to erode and become compromised, resulting in flooding to her property a year later in May 2023. To determine whether Baskin raised a fact issue on the nexus requirement, we turn to several cases for helpful guidance.

First, the Texas Supreme Court has held a fact issue existed on whether property damage arose from a city's "operation or use." In *Rattray*, a group of homeowners sued Brownsville for closing a motor-driven storm-water gate during a rainstorm, causing water to accumulate and flood their homes. 662 S.W.3d at 863–64. Although the rainwater was the immediate cause of the homeowners' damages, the Texas Supreme Court concluded these allegations satisfied § 101.021(1)'s "operation or use" requirement because the gate had a motor and was "used to control waterflow," "the City closed the gate, and it was that *use* of the gate (the attempt to control waterflow) that immediately preceded and allegedly caused the flooding of the homeowners' neighborhood." *Id.* at 872 (emphasis in original). Regarding the nexus requirement, the Court concluded that, at least at this stage of the litigation, the homeowners satisfied their burden to create a fact issue on whether their property damage arose from the closure of the gate. *Id.* at 874. It continued that "the temporal and geographic links are both tight" because "a close temporal proximity existed between the closing of the gate and the flooding of the homeowners' properties[,]" and it "all happened within the same episode of events." *Id.* Further, there was no allegation by the city of there being "any significant geographical attenuation between the gate and the homeowners' properties." *Id.*

Similarly, the First Court of Appeals has also found a fact issue where Houston city employees were using a "heavy trash truck" to collect fallen tree limbs near the street. *City of Houston v. Johnson*, No. 01-23-00938-CV, 2025 WL 1033754, at *1 (Tex. App.—Houston [1st

10

Dist.] Apr. 8, 2025, no pet.) (mem. op.). As Johnson, who was driving on the same street, passed the city's truck, a limb fell from the truck and struck her car. Johnson sued Houston, alleging its governmental immunity was waived under § 101.021(1). *Id.* The court concluded it was not necessary that the city's trash truck itself strike Johnson's vehicle to satisfy the "damage arises from operation or use" requirement and her allegations satisfied the § 101.021(1) requirement that a plaintiff's damages arise from the operation and use of a motor-driven vehicle due to a government employee's negligence. *Id.* at *2–3. The court noted that, although it was a falling tree limb that struck Johnson's vehicle, it was "operation and use of [the city's] trash truck for its intended purpose (retrieving tree limbs)" and the "failure to properly load and secure the limb onto the truck, which led to the limb falling out of the truck and causing Johnson's damages." *Id.* at *3. The court further noted that "[t]hese events are alleged to have occurred in close temporal and geographic proximity such that it was the operation and use of the truck to collect limbs that resulted in a limb falling on Johnson's vehicle as she drove on the street." *Id.*

In contrast with these authorities, we are also guided by a string of cases where a plaintiff failed to raise a fact issue to waive immunity under the TTCA. In *San Antonio Water System v. Overby*, the Overbys' home and yard, which had an alley that ran behind it, were flooded by rainwater and sewage. 429 S.W.3d 716, 718 (Tex. App.—San Antonio 2014, no pet.). After their complaints to SAWS and others remained unresolved, the Overbys sued multiple defendants including SAWS, alleging SAWS knew its maintenance of the sewer system, including the alley's surface over the sewer system, caused rainwater to damage their yard and home. They also alleged SAWS knew its failure to use proper manhole covers caused the sewer system to overflow and deposit fecal matter across their yard. *Id.* The Overbys offered evidence to show (1) SAWS used motor-driven equipment to maintain the alley, (2) the alley collected rainwater which sometimes

11

flooded their yard with rainwater and sewage, and (3) this constituted a nuisance. *Id.* at 722. The court of appeals concluded the requisite nexus was not present because "[t]he evidence conclusively prove[d] that it was not SAWS's use of motor-driven equipment to excavate, repair, and refill the alley that damaged the Overbys' property. Rather, it was the condition of the alley that led to their damage, and a use of motor-driven equipment that results in a condition that causes an injury is not a sufficient nexus." *Id.*

In *Dorbandt v. Cameron County*, the County performed excavation work in 2005 on a public easement located along the property line between some of the appellants' properties. No. 13-11-00337-CV, 2012 WL 1390576, at *1 (Tex. App.—Corpus Christi-Edinburg Apr. 19, 2012, no pet.) (mem. op.). The appellants alleged the County "took certain actions to divert water from County maintained borrow ditches running along both sides of West Arroyo City Boulevard and direct the flow of water into the easement." *Id.* The appellants contended "'the County, through the use of motor-driven vehicles and/or equipment, tore down a fence, damaged [appellants'] property, marooned a large piece of construction equipment [in the public easement], and negligently performed excavation work which caused substantial damage to their property during heavy rains' because of a new 'massive low area in the flow path [of the easement] that . . . obstructed egress to the Arroyo Colorado.'" *Id.* In March 2007, heavy rainfall occurred and, allegedly because of the County's negligent excavation work, "water was diverted into the [e]asement and then prevented from properly draining into the Arroyo Colorado," and appellants' properties were flooded because of the County's prior negligent actions, combined with the heavy rainfall. *Id.* The appellants also alleged the same type of damage occurred again in 2008, when a hurricane struck causing heavy rainfall in the area. *Id.*

12

On appeal, the court held that although the appellants characterized their injury "as one arising from the County's negligent operation or use of motor-driven equipment, the record show[ed] that even when liberally construed, their complaint concern[ed] a condition the County may have created years before the heavy rainfall flooded their properties in 2007 and 2008." *Id.* at *3. The court noted that the parties agreed the County's motor-driven equipment was removed from the area two years before any flooding occurred and it was not present during any of the heavy rainfall events in 2007 and 2008. *Id.* at *4. The court held that "the County's use of motor-driven equipment, at most, only created the condition that made the flooding of their properties possible at least two years later." *Id.* Therefore, the appellants failed to show a causal nexus between the County's alleged act of negligent use of motor-driven equipment and their purported injuries. *Id.*

Finally, in *Ector County v. Breedlove*, after heavy rains in October 2000 flooded the Breedloves' home, they sued Ector County, claiming that (1) in performing its road and ditch work, the county negligently increased the grade near their home to the extent that water would not drain away from their residence; (2) the county negligently installed drainage culverts near other properties and failed to place a culvert near their property; (3) the county's right-of-way and drainage ditches constituted a premises defect; and (4) County employees' negligent operation and use of motor-driven vehicles or motor-driven equipment proximately caused the flooding to the home. 168 S.W.3d 864, 865 (Tex. App.—Eastland 2004, no pet.). On appeal from the trial court's denial of the plea, the county pointed out there was no motor-driven equipment near the Breedloves' property at the time of the flooding, the last work by the county near the Breedloves' property was done two years before the flooding, and the use of motor-driven equipment did not cause injury within the meaning of § 101.021(1) because it did no more than furnish the condition

13

that made the Breedloves' injury possible. *Id.* at 866. The Breedloves contended County employees were negligent in their use of motor-driven equipment while performing road and ditch grade work near their property and, therefore, governmental immunity was waived. *Id.* The court held that the use of Ector County's motor vehicle only furnished the condition of the increased grade and misplacement of culverts which caused the flooding of their home. *Id.* at 867.

Here, we conclude that Baskin's allegations are more akin to those in *Overby*, *Dorbandt*, and *Breedlove,* and distinguishable from *Rattray* and *Johnson*. Although Baskin contends the County used or operated backhoes, bulldozers, and trucks in working on the retention pond located on her property—thus raising allegations concerning "operation or use" of motor-driven vehicles or equipment under § 101.021(1)(A)—nevertheless, she does not contend any County vehicles or equipment were in operation or use, or even present on her property, in May 2023. *See PHI, Inc.*, 593 S.W.3d at 305 ("[W]hether a government vehicle was in 'active' operation 'at the time of the incident' is an important consideration in determining whether an alleged injury arises from the operation or use of a vehicle."). The alleged negligence by the County occurred before the May 2023 flood—as early as 2013 and no later than 2022. Therefore, there is no temporal or geographic proximity between the alleged negligent "operation or use" of motor-driven vehicles and/or equipment and Baskin's damages. Based on the allegations in Baskin's first amended petition, we must conclude the County's use or operation of motor-driven vehicles and/or equipment only furnished the condition that caused the flooding of Baskin's property. Accordingly, we conclude the trial court did not err by granting the County's plea to the jurisdiction on the basis of the allegations contained in Baskin's first amended petition.[3]

---

[3] Baskin raises for the first time on appeal that the County's plea should also be denied under § 101.021(2), which provides a governmental unit may be liable for "personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." Tex. Civ. Prac. & Rem. Code Ann. § 101.021(2). Baskin neither developed this argument on appeal nor

# V. OPPORTUNITY TO AMEND

Because we conclude the County is immune from Baskin's pleaded claims, we must finally determine whether to dismiss those claims with prejudice or remand the case to the trial court to give her an opportunity to replead.

Generally, a plaintiff deserves "a reasonable opportunity to amend" unless the pleadings affirmatively negate the existence of jurisdiction. *Harris Cnty. v. Sykes*, 136 S.W.3d 635, 639 (Tex. 2004). However, dismissal with prejudice is appropriate "when a trial court lacks subject matter jurisdiction because of the [governmental] immunity bar" and the plaintiff is incapable of remedying the jurisdictional defect. *Id.* "If a plaintiff has been provided a reasonable opportunity to amend after a governmental entity files its plea to the jurisdiction, and the plaintiff's amended pleading still does not allege facts that would constitute a waiver of immunity, then the trial court should dismiss the plaintiff's action." *Id.* "Such a dismissal is with prejudice because a plaintiff should not be permitted to relitigate jurisdiction once that issue has been finally determined." *Id.*

Here, our record shows that Baskin amended her pleadings the day after the County filed its plea to the jurisdiction. Additionally, Baskin responded to the plea pointing to the allegations made in her amended petition. Accordingly, Baskin has already been given a fair opportunity to amend her pleadings. *See Sepulveda*, 170 S.W.3d at 617.

Further, as we concluded above, Baskin's allegations concerning the operation or use of motor-driven vehicle or equipment and use of tangible personal property indicate her claims are barred by sovereign immunity. Based on the facts alleged, we further conclude the defect in her pleading is incurable. It is clear from the pleadings that the negligent use that Baskin has alleged,

---

did she include allegations in her pleadings identifying the personal property complained of or demonstrate that her damages resulted from the use or misuse of tangible personal property. *See* Tex. R. App. P. 38.1(i).

at most, created the condition that made the injuries possible, and thus the County did not waive its immunity. *See Sykes*, 136 S.W.3d 635, 639. Accordingly, we conclude the trial court did not err in granting the plea to the jurisdiction without giving Baskin another opportunity to replead.

## VI. CONCLUSION

We affirm the trial court's order granting the County's plea to the jurisdiction.

GINA M. PALAFOX, Justice

November 19, 2025

Before Salas Mendoza C.J., Palafox and Soto, JJ.

16